IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ANTONIO RONALDO GRATE, | ) | C/A No. 4:07-712-HMH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN COLIE L. RUSHTON, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Antonio Ronaldo Grate ("Petitioner/Grate"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on March 14, 2007. Respondent filed a motion for summary judgment on June 14, 2007, along with a return and supporting memorandum. The undersigned issued an order filed June 15, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response. Petitioner filed a response on July 19, 2007.

## I. PROCEDURAL HISTORY

The procedural history as set forth by the Respondent will be set forth herein with the disputed portions by petitioner noted.

Petitioner is presently in custody at McCormick Correctional Institution of the South Carolina

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

Department of Corrections pursuant to Orders of Commitment from the Clerk of Court for Georgetown County. At the November 1999 term, the McCormick County Grand Jury indicted Petitioner for possession of a firearm during commission of a violent crime (99-GS-22-1058) and assault and battery with intent to kill ("ABIK") (99-GS-22-1059). {PCR App. 321-24}.

Petitioner was represented at the trial level by David Hood, Esquire. From December 8-10, 1999, Petitioner went to trial before the Honorable Paula H. Thomas and a jury. The jury found Petitioner guilty as charged {PCR App. 228-33}, and Judge Thomas sentenced Petitioner to twenty (20) years imprisonment for ABIK and a concurrent five (5) years for possession of a weapon. {PCR App. 242}.

A timely notice of appeal was filed with the South Carolina Court of Appeals. Wanda H. Haile, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his direct appeal. On May 24, 2001, Haile filed a "no merit" Final Anders Brief of Appellant and Petition to be Relieved as Counsel, in which she raised the following issues on behalf of Petitioner:

> The lower court erred in allowing the state to present its case to the jury via the victim's testimony because it appeared as though the victim was incompetent to testify as a witness at trial.

Petitioner filed a *pro se* Brief of Appellant received by the court of appeal on June 28, 2001, in which he raised the following issues:

> (1) The first issue I believe that the Court of Appeals should consider are motions made by the defense counsel regarding jury selection.
> (2) At trial, arguments were made regarding a motion based on the excited utterance exception to the hearsay rule.
> (3) The court allowed the state to present its case to the jury via the victim's testimony against objections by the defense that the victim was incompetent to testify as a witness at trial.

      (4)      Also during the course of trial, the State moved to introduce pictures of the area where the victim was lying in the street.

      (5)      The final issues I think the Court of Appeals should consider is where the defense counsel moved for directed verdict.

On December 17, 2001, the South Carolina Court of Appeals dismissed the appeal after Anders review and granted the Petition to be Relieved as Counsel. State v. Grate, Unpub Op. No. 2001-UP- 539 (S.C. Ct. App. 2001) (a copy of which is attached to Petitioner's habeas petition in this case). The Remittitur was sent down on January 17, 2002.

Petitioner next filed in Georgetown County Common Pleas Court an Application for Post-Conviction Relief ("APCR"), on June 27, 2002. {PCR App. 244}.[2] In the APCR, Petitioner raised the following grounds for relief:

      (1)      Violation of 90 day indictment bar,

      (2)      Ineffective Assistance of Counsel,

      (3)      Prosecution Misconduct.

The State filed a Return on March 23, 2004. {PCR App. 264}.

An evidentiary hearing in Petitioner's APCR was held on April 27, 2004, before the Honorable B. Hicks Harwell. {PCR App. 275}. Petitioner was present and represented by his appointed counsel Julian Hanna, Esquire. Petitioner testified on his own behalf; the State called trial counsel Hood. Judge Harwell took the matter under advisement, and on June 15, 2004, signed an

---

[2] Petitioner asserts in his response that he sent his first PCR for filing on or about February 15, 2002, but did not receive a case umber or reply from the Georgetown Clerk of Court. Petitioner contends that after reading the newspaper about the Clerk of Court difficulties with an overflowing amount of court documents and other legal documents, out of an abundance of caution, he submitted a second APCR to the Clerk of Court in Georgetown County for filing on June 27, 2002. However, petitioner does not provide any evidence of this allegation and the APCR was not filed until June 27, 2002.

Order of Dismissal with Prejudice in which he rejected Petitioner's claims. {PCR App. 312}.

A timely notice of appeal was filed with the South Carolina Supreme Court from Judge Harwell's Order of Dismissal. Wanda P. Hagler, of the South Carolina Office of Appellate Defense, was appointed to represent Petitioner in his PCR appeal. On March 9, 2005, Haile filed a "no merit" *Johnson* Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which she raised the following issues on behalf of Petitioner:

> Trial counsel erred in failing to cross-examine the victim throughly regarding this identification and recollection of the events in question.

The State filed a letter Return to the *Johnson* Petition on January 24, 2005. Petitioner filed a *pro se* Response to the *Johnson* Petition for Writ of Certiorari dated April 28, 2005, in which he raised the following issues:

> (1) Did the circuit court err in holding that petitioner's trial counsel was not ineffective in failing to present evidence in rebuttal of victim's identification and recollection of events in question?
>
> (2) Did the circuit court err in holding that petitioner's trial counsel was not effective in failing to request a lesser included offense?
>
> (3) Did the circuit court err in holding that petitioner's trial counsel was not ineffective in failing to object and have jury instructed on improper comments?
>
> (4) Did the circuit court err in holding that petitioner's trial counsel was not ineffective in failing to object and have jury instructed on misleading statements?
>
> (5) Did the circuit court err in holding that petitioner's trial counsel was not ineffective in failing to move for replacement of juror?

On May 3, 2006, the South Carolina Supreme Court issued an Order in which it denied the

Petition for Writ of Certiorari and granted the Petition to be Relieved as Counsel. The Remittitur was sent down on May 22, 2006. Petitioner asserts he submitted a *pro se* petition for rehearing on May 23, 2006, but the state Supreme Court refused to consider it as untimely.

## II.  GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, Petitioner raises the following grounds for relief, quoted verbatim:

> GROUND ONE:   Prosecutorial misconduct
>
> GROUND TWO:   Violation of right to due process of law by trial court
>
> GROUND THREE:   Ineffective assistance of counsel
>
> GROUND FOUR:   Circuit court erroneously ruled trial counsel rendered reasonably effective assistance.

(Petition).

## III.  SUMMARY JUDGMENT

On June 14, 2007, the Respondent filed a return and memorandum of law in support of his motion for summary judgment. Petitioner filed a response.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services,

901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### IV.  STANDARD OF REVIEW

Since Grate filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

### V.   DISCUSSION AS TO STATUTE OF LIMITATIONS

The Respondent asserts that the Petitioner's claims must be dismissed as untimely.

Specifically, Respondent asserts that the Petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondent argues as follows, quoted verbatim:

> Petitioner's conviction was finalized by the conclusion of direct review on March 17, 2002, or ninety (90) days after December 17, 2001, the date the South Carolina Court of Appeals issued the decision affirming Petitioner's convictions. . . .
>
> Petitioner did not file his APCR until June 27, 2002, so one-hundred and two (102) days of non-tolled time ran since the period of limitations began on March 17, 2002. The period of limitations was tolled during the pendency of the APCR until no later than May 22, 2006, when the South Carolina Supreme court issued the Remittitur from its Order denying certiorari review on the APCR Order of Dismissal.
>
> Petitioner's envelope does not reflect a prison mailroom stamp. The postmark reflects it was mailed on March 9, 2007, from a McCormick , SC zip code 29835, but Petitioner's return address at his prison has the zip code 29899. The package was received and filed by the Clerk of this Court on March 12, 2007. Since at present there is nothing to show this envelope was sent through a prison mailroom, then Petitioner is not entitled to the benefit of the rule in Houston v. Lack, 487 U.S. 266 (1988). Thus, two hundred and ninety-four (294) days of non-tolled time accrued between the disposition of his APCR and the filing of this action. When the pre- and post-APCR time periods are added, there were at least three hundred and ninety-six (396) days of non-tolled time since Petitioner's period of limitations began to run on March 17, 2002. Even if Petitioner was entitled to the benefit of some undetermined delivery date, there is still thirty-one (31) days of non-tolled time over the limit. Moreover, as noted before in footnote one, supra, a further and additional fifty-nine (59) days should be added to the calculation of non-tolled time, since the 90-day period for seeking certiorari in the United States Supreme Court should not be included where Petitioner did not seek discretionary review before the state supreme court during the direct appeal.
>
> Therefore, the present Petition for Writ of habeas Corpus is clearly time-barred and should be denied and dismissed.

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to

establish a one-year statute of limitations for filing habeas petitions.[3]  Subsection (d) of the statute now reads:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the <u>latest</u> of–
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, the South Carolina Court of Appeals issued an opinion dismissing the appeal on December 17, 2001. Petitioner's conviction became final on March 17, 2002, ninety (90) days after December 17, 2001. Petitioner filed his pro se application for PCR on

---

[2] Prior to this amendment there was no statute of limitations.  Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing.  <u>Duarte v. Hershberger</u>, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

9

June 27, 2002. Therefore, one-hundred and two (102) days of non-tolled time passed between the conclusion of direct review and the filing of the PCR application. The period of limitations for filing his federal habeas corpus action was tolled during the pendency of the PCR. The South Carolina Supreme Court issued an Order on May 3, 2006, denying the certiorari petition. Petitioner had two-hundred and sixty-three (263) days of non-tolled time left in which to file his federal habeas petition. Petitioner filed this habeas petition on March 14, 2007. A review of the envelope does not reveal a stamped date from the Correctional Institution. However, the stamped date it was received into the Clerk of Court's office was March 12, 2007. Petitioner asserts and he submitted the envelope containing his habeas petition to the mailroom on March 9, 2007. Thus, the Houston v. Lack delivery date would be March 9, 2007, giving Petitioner the benefit of the doubt. However, even using the date of March 9, 2007, another three hundred and ten (310) days of non-tolled time expired. Thus, the time is outside the limitations period.

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d). In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d) commenced on April 24, 1996. Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period. This petition remained "pending" in state courts until January 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

Harris, 209 F.3d at 327.

In his response in opposition to the motion for summary judgment, Petitioner asserts that his petition should not be dismissed on the limitations issue. Petitioner asserts that he submitted his first application for PCR on February 15, 2002, but did not receive a case number or reply from the state Clerk of Court. Therefore, Petitioner asserts he submitted a second APCR for filing on June 27, 2002. Secondly, Petitioner asserts he submitted his first habeas petition to the prison mailroom on December 22, 2006, but it "was unsuccessful! Petitioner submitted another to go through the prison mailroom, a second time on March 8, 2006." (Petitioner's response). Therefore, Petitioner argues there was only a lapse of thirty (30) days from the date of final conviction until the date he filed his PCR application. Petitioner further asserts that the date he first submitted his habeas petition to the prison mailroom, December 22, 2006, should be the second date used in calculating the limitations period.

Respondent filed a reply to the response asserting that Petitioner offers no documentation to support his assertion that he submitted his first APCR to the state Clerk of Court's office for filing on February 15, 2002. Respondent asserts that regardless, a PCR action is not considered filed until it is actually received by the correct Clerk of Court. Therefore, Respondent asserts that it is undisputed that there was no PCR action filed until June 27, 2002. Second, Respondent argues that Petitioner's assertion that he submitted his first habeas petition to the prison mailroom in December is not supported by anything other than Petitioner's own assertions and affidavit.

Petitioner has not submitted any documentation, other than his own affidavit, that substantiates his allegations that he sent his first PCR for filing in February 2002 or that his first habeas petition was submitted to the mailroom in December 2006. In Petitioner's affidavit, he attests

11

that "a Habeas Corpus Petition was first submitted to go through the prison mailroom on or about 12/22/2006. Lt. Gilcrist picked up the Habeas Corpus Petition in a[n] enclosed manila envelope properly addressed to the District Court from me, on or about 2/15/2007. I received the Habeas Corpus petition back from the mailroom without and/or not enclosed in the manila envelope I addressed. It had a small yellow sticky paper note attached, stating 'must be placed with SMU's outgoing mail.'" (Response). Thus, petitioner alleges that it took almost two months for his petition to be "picked up" and was then returned.

It appears Petitioner is asserting he is entitled to equitable tolling. The undersigned concludes there is no evidence that warrants equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

> Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000).  As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>
>> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.  To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation.  We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

> Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Based on the fact that petitioner has not shown any extraordinary circumstances to warrant equitable tolling, the undersigned finds that the petition is barred by the statute of limitations.

## VI.  CONCLUSION

As set out above, a review of the record indicates that the Petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that Respondent's motion for summary judgment (document #13) be GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

                                                            Respectfully Submitted,


                                                            s/Thomas E. Rogers, III
                                                            Thomas E. Rogers, III
                                                            United States Magistrate Judge

October 2 , 2007
Florence, South Carolina

    **The parties' attention is directed to the important notice on the next page.**